IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


REBECKKA SUNDGREN,

        Plaintiff,

vs.                         Case No. 12-4097-SAC

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security,[1]

        Defendant.


MEMORANDUM AND ORDER

This is an action reviewing the final decision of the Commissioner of Social Security denying the plaintiff supplemental security income payments. The matter has been fully briefed by the parties.

## I. General legal standards

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards. <u>Glenn v. Shalala</u>, 21 F.3d 983, 984 (10th Cir. 1994). Substantial evidence requires more than a

---

[1] Carolyn W. Colvin became Acting Commissioner of Social Security on February 14, 2013, replacing Michael J. Astrue, the former Commissioner of Social Security.

scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the conclusion. The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion. Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989). Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted. Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational. Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992). The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met. Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA). The claimant's physical or

mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled.  If

the claimant survives step four, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

## II. History of case

On October 8, 2010, administrative law judge (ALJ) William H. Rima issued his decision (R. at 20-30). Plaintiff alleges that she has been disabled since April 1, 2009 (R. at 20). At step one, the ALJ found that plaintiff has not engaged in

4

substantial gainful activity since plaintiff's alleged onset date of disability (R. at 22). At step two, the ALJ found that plaintiff has the following severe impairments: bipolar disorder, posttraumatic stress syndrome (PTSD), paranoid personality disorder, and drug abuse (R. at 22). At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment (R. at 23). After determining plaintiff's RFC (R. at 25), the ALJ determined at step four that plaintiff is unable to perform any past relevant work (R. at 29). At step five, the ALJ determined that plaintiff could perform other jobs that exist in significant numbers in the national economy (R. at 29-30). Therefore, the ALJ concluded that plaintiff was not disabled (R. at 30).

**III. Did the ALJ err in his analysis of plaintiff's credibility?**

Credibility determinations are peculiarly the province of the finder of fact, and a court will not upset such determinations when supported by substantial evidence. However, findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings. Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). Furthermore, the ALJ cannot ignore evidence favorable to the plaintiff. Owen v. Chater, 913 F. Supp. 1413, 1420 (D. Kan. 1995).

When analyzing evidence of pain, the court does not require a formalistic factor-by-factor recitation of the evidence. So long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility, the ALJ will be deemed to have satisfied the requirements set forth in Kepler. White v. Barnhart, 287 F.3d 903, 909 (10th Cir. 2002); Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000). Furthermore, the ALJ need not discuss every relevant factor in evaluating pain testimony. Bates v. Barnhart, 222 F. Supp.2d 1252, 1260 (D. Kan. 2002). An ALJ must therefore explain and support with substantial evidence which part(s) of claimant's testimony he did not believe and why. McGoffin v. Barnhart, 288 F.3d 1248, 1254 (10th Cir. 2002). It is error for the ALJ to use standard boilerplate language which fails to set forth the specific evidence the ALJ considered in determining that a claimant's complaints were not credible. Hardman v. Barnhart, 362 F.3d 676, 679 (10th Cir. 2004). On the other hand, an ALJ's credibility determination which does not rest on mere boilerplate language, but which is linked to specific findings of fact fairly derived from the record, will be affirmed by the court. White, 287 F.3d at 909-910.

The court will not reweigh the evidence or substitute its judgment for that of the Commissioner. Hackett v. Barnhart, 395 F.3d 1168, 1173 (10th Cir. 2005); White v. Barnhart, 287 F.3d

6

903, 905, 908, 909 (10th Cir. 2002). Although the court will not reweigh the evidence, the conclusions reached by the ALJ must be reasonable and consistent with the evidence. See Glenn v. Shalala, 21 F.3d 983, 988 (10th Cir. 1994)(the court must affirm if, considering the evidence as a whole, there is sufficient evidence which a reasonable mind might accept as adequate to support a conclusion). The court can only review the sufficiency of the evidence. Although the evidence may support a contrary finding, the court cannot displace the agency's choice between two fairly conflicting views, even though the court may have justifiably made a different choice had the matter been before it de novo. Oldham v. Astrue, 509 F.3d 1254, 1257-1258 (10th Cir. 2007).

Plaintiff argues that the ALJ made three errors in analyzing plaintiff's credibility: 1) reliance on plaintiff's noncompliance with her medications, 2) reliance on the reasons for plaintiff losing her jobs, and 3) reliance on plaintiff's daily activities. The court will examine each of these arguments.

First, the ALJ stated that the evidence suggests that plaintiff's medications are effective and that the plaintiff's exacerbation of symptoms occurs primarily during periods of time in which she has discontinued medication and therapy (R. at 26). Plaintiff argues that before using noncompliance as a basis to

7

discount her credibility, the ALJ must consider the Frey factors.

Before the ALJ may rely on a claimant's failure to pursue treatment or take medication as support for his determination of noncredibility, he or she should consider: (1) whether the treatment at issue would restore claimant's ability to work; (2) whether the treatment was prescribed; (3) whether the treatment was refused; and if so, (4) whether the refusal was without justifiable excuse. Thompson v. Sullivan, 987 F.2d 1482, 1490 (10th Cir. 1993); Frey v. Bowen, 816 F.2d 508, 517 (10th Cir. 1987). This analysis applies when noncompliance with a physician's recommendation is used as part of the credibility determination. Piatt v. Barnhart, 231 F. Supp.2d 1128, 1129 (D. Kan. Nov. 15, 2002)(Robinson, J.); Silverson v. Barnhart, Case No. 01-1190-MLB (D. Kan. May 14, 2002)(Belot, J.); Goodwin v. Barnhart, 195 F. Supp. 2d 1293, 1294-1296 (D. Kan. (April 15, 2002)(Crow, S.J.).

The ALJ considered the effectiveness of plaintiff's medications, and her symptoms when she discontinued medications and therapy (R. at 26). Thus, this is not a situation where the Frey test is not required because the treatment or medication had not been prescribed, and the ALJ is simply considering what attempts the claimant made to relieve their pain. See McAfee v. Barnhart, 324 F. Supp.2d 1191, 1201 (D. Kan. 2004); Jesse v.

Barnhart, 323 F. Supp.2d 1100, 1108 (D. Kan. 2004); Billups v. Barnhart, 322 F. Supp.2d 1220, 1226 (D. Kan. 2004).

Dr. Schulman, in his state agency mental assessment, stated that "with therapy and medications her condition is stable" (R. at 348). Dr. Adams, in her state agency mental assessment, stated that "the treating source shows that C is able to get along with others and communicate rationally when she is following treatment" (R. at 513). The ALJ could reasonably rely on the statements from these two medical sources to find that plaintiff's medications are effective and that the exacerbation of symptoms occurs primarily during periods of time in which she has discontinued medication and therapy. The ALJ has substantially complied with Frey.

Second, the ALJ found plaintiff less credible due to conflicting reasons given for quitting prior jobs, and that those reasons included reasons unrelated to her mental disorder (R. at 26). The court finds that the ALJ has accurately set forth the relevant evidence on this issue. The court will not reweigh the evidence, and finds no clear error by the ALJ in discounting plaintiff's credibility based on her reasons given for quitting work. The court would also note that the ALJ relied on a statement from plaintiff's former supervisor at Taco Bell, who stated that plaintiff had no limitations or impairments in her ability to perform the job, no problems in

understanding and following directions, performed duties in a timely and satisfactory manner, no problems with staying on the assigned job with ordinary supervision, was able to concentrate adequately, no problems getting along with co-workers, supervisors and the public, was given no special consideration in the job, and was able to learn new tasks within an acceptable time frame. He indicated that work absences were due to family problems, but that plaintiff always called if she could not work. He also indicated that he would rehire the person (R. at 27, 208-210). The ALJ also relied on a vocational report stating that plaintiff had been successful at the Taco Bell job, and had been advanced to a shift team leader (R. at 27, 254).

Third, the ALJ discounted plaintiff's credibility, noting that she cares for three small children, does laundry, shopping, and cross stitching. The ALJ stated that her daily activities "support a finding that she is capable of performing simple, unskilled work" (R. at 26).

According to the regulations, activities such as taking care of yourself, household tasks, hobbies, therapy, school attendance, club activities or social programs are generally not considered to constitute substantial gainful activity. 20 C.F.R. § 404.1572(c) (2013 at 399). Furthermore, although the nature of daily activities is one of many factors to be considered by the ALJ when determining the credibility of

10

testimony regarding pain or limitations, Thompson v. Sullivan, 987 F.2d 1482, 1489 (10th Cir. 1993), the ALJ must keep in mind that the sporadic performance of household tasks or work does not establish that a person is capable of engaging in substantial gainful activity. Krauser v. Astrue, 638 F.3d 1324, 1332-1333 (10th Cir. 2011); Thompson, 987 F.2d at 1490.

In the case of Draper v. Barnhart, 425 F.3d 1127, 1130-1131 (8th Cir. 2005), the ALJ noted that the claimant engaged in household chores, including laundry, grocery shopping, mowing, cooking, mopping and sweeping. The ALJ concluded that claimant's allegations of disabling pain were inconsistent with her reports of her normal daily activities and were therefore not deemed credible. The court found that substantial evidence did not support this conclusion, holding as follows:

> **The fact that Draper tries to maintain her home and does her best to engage in ordinary life activities is not inconsistent with her complaints of pain, and in no way directs a finding that she is able to engage in light work.** As we said in McCoy v. Schweiker, 683 F.2d 1138, 1147 (8th Cir.1982) (en banc), the test is whether the claimant has "the ability to perform the requisite physical acts day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world." In other words, evidence of performing general housework does not preclude a finding of disability. In Rainey v. Dep't of Health & Human Servs., 48 F.3d 292, 203 (8th Cir.1995), the claimant washed dishes, did light cooking, read, watched TV, visited with his mother, and drove to shop for

>           groceries.  We noted that these were
>           activities that were not substantial
>           evidence of the ability to do full-time,
>           competitive work. In Baumgarten v. Chater,
>           75 F.3d 366, 369 (8th Cir.1996), the ALJ
>           pointed to the claimant's daily activities,
>           which included making her bed, preparing
>           food, performing light housekeeping, grocery
>           shopping, and visiting friends.  We found
>           this to be an unpersuasive reason to deny
>           benefits: "**We have repeatedly held...that
>           'the ability to do activities such as light
>           housework and visiting with friends provides
>           little or no support for the finding that a
>           claimant can perform full-time competitive
>           work**.'" Id. (quoting Hogg v. Shalala, 45
>           F.3d 276, 278 (8th Cir.1995)). Moreover, we
>           have reminded the Commissioner
>
>>           **that to find a claimant has the
>>           residual functional capacity to
>>           perform a certain type of work,
>>           the claimant must have the ability
>>           to perform the requisite acts day
>>           in and day out, in the sometimes
>>           competitive and stressful
>>           conditions in which real people
>>           work in the real world...The
>>           ability to do light housework with
>>           assistance, attend church, or
>>           visit with friends on the phone
>>           does not qualify as the ability to
>>           do substantial gainful activity**.
>
>           Thomas v. Sullivan, 876 F.2d 666, 669 (8th
>           Cir.1989) (citations omitted).

Draper, 425 F.3d at 1131 (emphasis added).

While the court has a concern regarding the ALJ's reliance on plaintiff's daily activities, the court concludes that the balance of the ALJ's credibility analysis is supported by substantial evidence in the record.  Branum v. Barnhart, 385

12

F.3d 1268, 1274 (10th Cir. 2004)("While we have some concerns regarding the ALJ's reliance on plaintiff's alleged failure to follow a weight loss program and her performance of certain minimal household chores, we conclude that the balance of the ALJ's credibility analysis is supported by substantial evidence in the record"). The balance of the credibility analysis was closely and affirmatively linked to substantial evidence, including medical opinion evidence regarding plaintiff's RFC, and plaintiff does not take issue with the weight the ALJ gave to the medical opinion evidence. Furthermore, plaintiff did not argue that other medical evidence established that plaintiff had additional limitations not included in the ALJ's RFC findings.

IT IS THEREFORE ORDERED that the judgment of the Commissioner is affirmed pursuant to sentence four of 42 U.S.C. § 405(g).

Dated this 4th day of September, 2013, Topeka, Kansas.

s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge